CLARK v. JONESBORO, LAKE CITY & EASTERN RAILROAD COMPANY.

Opinion delivered September 28, 1908.

CARRIERS—"REGULAR STATION" DEFINED.—Under Kirby's Digest, § 6612, providing that "any railroad company may charge the sum of twenty-five cents for the carriage of any passenger who may get on or off a train at other than a regular station," a station at which a railroad company kept no agent, but stopped its trains only when requested or signalled to do so, receiving passengers without tickets and freight without bills of lading, is not a "regular" station.

Appeal from Greene Circuit Court; *Frank Smith*, Judge; affirmed.

*F. G. Taylor*, for appellant.

1.  That Chickasawba is a regular station on appellee's line of road is established by the evidence.  By reason of the fact that

its line crosses another railroad at this point, the statute makes it a regular station. Kirby's Digest, § 6771; 84 Ark. 406; 13 Cyc. 1041; 9 Am. & Eng. Enc. of L. 366; 32 N. E. 817; 21 N. E. 7.

2. If there was evidence legally sufficient to sustain a verdict, it was the court's duty to submit it to the jury. 57 Ark. 461.

E. F. Brown, for appellee.

Chickasawba was not a regular station on appellee's road. The Legislature has itself practically defined a regular station to be one where the train is required to stop one time each way, daily, where they sell tickets, and a flag station is one where the train is required to stop when properly signalled. Kirby's Digest, § 6704. See, also, 40 Am. & Eng. R. Cas. 18; 35 Id. 529; 32 N. E. 817.

HILL, C. J.   In March, 1906, Clark rode over the Jonesboro, Lake City & Eastern Railroad from Chickasawba to Blytheville and from Blytheville to Chickasawba, making nineteen trips. between these points. He was charged, and paid, ten cents for his fare on each trip. The distance between these points is less than one mile. Clark has brought this suit for penalty, under the act of April 4, 1887 (secs. 6611, 6615, and secs. 6619-6620, Kirby's Digest). Section 6612 provides that "any railroad company may charge the sum of twenty-five cents for the carriage of any passenger who may get on or off a train at other than a regular station." The only question in this case is, whether Chickasawba was a regular station of the appellee railroad company, or whether it was a flag station. This is a question of fact. *Chicago, R. I. & P. Ry. Co.* v. *Stanford,* 84 Ark. 406.

There is no conflict in the essential facts as developed by the plaintiff and defendant in the trial, and at the conclusion of the trial the court directed a verdict for the defendant, and the plaintiff has appealed, and it is for this court to determine whether there was any evidence to send that issue to the jury.

The evidence developed these facts: Appellee railroad crossed the Paragould & Southeastern Railroad at Chickasawba, and the P. & S. E. Railroad had a depot at this place. In March, 1906, appellee railroad company had no depot there, had

no joint agency with the other railroad, and did not use its depot; but its trains stopped at the crossing, right opposite the depot of the P. & S. E. Railroad. It received and discharged passengers at this point when called to do so; it received freight, express and mail matter, although it did not always stop for the mail, merely checking up to receive and discharge it when it did not otherwise stop. It sold no tickets, issued no bills of lading for freight nor checks for baggage, and did not keep an agent at the place. When freight or express matter was delivered, it was merely taken on without receipt or contract. This railroad had numerous other stations like this one, where it received and discharged passengers and freight upon being flagged, receiving the passengers without tickets and freight without bills of lading. Such stations were designated "flag stations" by the railroad; and at such flag stations its trains made no stops unless signalled to do so. Most of these stations were at sawmills along the line. It also maintained regular stations at numerous places at which tickets were sold and baggage checked, bills of lading issued, and at which station houses were erected and agents maintained. At such stations the agent would stamp and sell tickets to the public, issue and receive bills of lading for freight and express, operate the telegraph and receive orders for the moving of trains, and everything necessary to conduct a public carrier's business at such place. The depots were kept warm in cold weather for the reception of passengers, and separate waiting rooms for the white and black races were equipped and maintained, in conformity to the laws of the State.

There is a statute in North Carolina that uses the term "regular station" in referring to depots maintained for receiving freight tendered at railway stations or wharfs or boat landings; and a case came before the Supreme Court of that State as to whether that statute had been violated where freight was refused at a place called "Spring Hill." At the place in question there was no depot, no freight house, no agent, no employees stationed there for the purpose of receiving freight, although at times considerable freight was received there; the mail trains stopped there regularly to deliver mail, and the place was designated by the company as a station. The court said:

"A 'regular' depot or station of a railroad company, as con-

templated by the statute, is a certain place situate along side of or near to its railroad, fitted up by it with suitable buildings, erections, appliances and conveniences for carrying on generally and continuously, in an orderly manner, the business of transporting freights, as is usually done by such companies. Such buildings, and other things necessary for a regular depot or station, may be greater or smaller in number and extent, or more or less elaborate, than others of like kind and for like purposes; but whether they be sufficient, or good, or indifferent, or are well or ill adapted to, and intended for, the purposes of prosecuting the business of transporting freights and passengers, receiving from shippers generally, and at all seasonable times, such freights as the railroad company is required to transport over its road, such depots or stations imply, ordinarily, such suitable and sufficient buildings, erections and appliances as may be necessary in receiving and delivering freights, and for the temporary protection of the same until they shall be transported or delivered to the persons entitled to have them, and that the company has a business office there, and suitable agents and employees to receive and deliver freights, to give receipts, bills of lading for the same, and to do the like and similar service." *Land* v. *Wilmington & Weldon Railroad,* 104 N. C. 48. See, also, to the same effect, *Kellogg* v. *Suffolk & Carolina Rd. Co.,* 100 N. C. 158, and *Ill. Cent. Rd. Co.* v. *Latimer,* 128 Ill. 163.

The reasoning of the North Carolina court was applied to the handling of freight, but is equally as applicable to the handling of passengers. The term "regular station" or "station," as distinguished from a "flag station," has a well understood meaning in railroad parlance, and is recognized by the courts. 7 Words & Phrases Judicially Defined, p. 6039 and p. 6644. When the Legislature used the term, it must be taken that it was intended as generally understood.

The court was right in directing the verdict.

Judgment affirmed